UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRUSTEES OF THE NORTH ATLANTIC STATES
CARPENTERS HEALTH, PENSION, ANNUITY,
APPRENTICESHIP, and LABOR MANAGEMENT
COOPERATION FUNDS, and the NORTH ATLANTIC
STATES REGIONAL COUNCIL OF CARPENTERS,

                               Plaintiffs,                    **REPORT AND
RECOMMENDATION**

           -against-                       CV 23-4166 (PKC)(AYS)

WND CONSTRUCTION LLC and ARCH INSURANCE
COMPANY,

                            Defendants.
------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Plaintiffs, The Trustees of the North Atlantic States Carpenters Health, Pension, Annuity,

Apprenticeship, and Labor Management Cooperation Funds (the "Funds") and the North Atlantic

States Regional Council of Carpenters (the "Union") (collectively, "Plaintiffs"), commenced this

action on June 6, 2023 against Defendants WND Construction LLC ("WND") and Arch

Insurance Company ("Arch"), pursuant to Sections 502 and 515 of the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended, Section 301

of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and Section 220-g

of the New York Labor Law ("NYLL") for delinquent contributions that WND failed to pay

under the parties' collective bargaining agreement ("CBA"). (See generally Compl., Docket

Entry ("DE") [1]).

      Plaintiffs filed an Amended Complaint on December 8, 2023. (DE [18].) While Arch

appeared herein, WND failed to answer either the Complaint or the Amended Complaint or

otherwise appear in this action. By stipulation dated August 29, 2024, Plaintiffs voluntarily dismissed Arch from this action.

On July 31, 2024, Plaintiffs filed a request for a certificate of default with the Clerk of the Court for WND, (DE [33]), which was granted on August 8, 2024. (DE [34.) On November 15, 2024, Plaintiffs filed the within motion for default judgment (DE [36]), which was referred to the undersigned by Judge Chen on November 18, 2024, for a recommendation as to whether the motion should be granted and what, if any, damages should be awarded.  For the following reasons, this Court respectfully recommends that Plaintiffs' motion be granted in its entirety.

<u>BACKGROUND</u>

The Plaintiff Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA and the LMRA. (Am. Compl. ¶¶ 4-5.) The Plaintiff Union is a labor organization that represents employees in an industry affecting commerce within the meaning of the LMRA. (<u>Id.</u> ¶ 6.) Defendant WND is a domestic limited liability company incorporated under the laws of New York and who, at all relevant times, was a party to a CBA with the Union dated August 4, 2022, covering the period May 1, 2022 through April 30, 2027. (<u>Id.</u> ¶¶ 7, 10; Banfield Decl. ¶ 6 and Ex. A, annexed thereto.)

Pursuant to the parties' CBA, WND agreed to be bound to the documents and instruments governing the Funds, including the Funds' policy for the collection of employer contributions (the "Collection Policy"). (<u>Id.</u> ¶ 12; Banfield Decl. Ex. A; Tompuri Decl., Ex. C.) The CBA requires WND to make contributions to the Funds for all work performed by its employees within the trade and geographical jurisdiction of the Union ("Covered Work"). (<u>Id.</u> ¶ 14.)

Pursuant to the CBA, WND was required to pay wages to Union members in its employ at the rates prescribed therein, which, in Ulster County between October 2022 and March 2023, was in an amount no less than $34.68 per hour for up to forty hours per week, as part of a combined wage-and-benefit package. (Id. ¶ 18.) WND was further required, pursuant to Section 220 of the NYLL, to pay wages at the prescribed prevailing rate to all workers in its employ performing public work, as part of a combined wage-and-benefit package. (Id. ¶ 19.) Under both the CBA and the NYLL, WND was required to pay wages at a rate of one and one-half times its workers' standard hourly rate for all hours worked in a given week that exceeded forty, in an amount no less than $52.02 per hour. (Id. ¶ 20.)

WND contracted to perform Covered Work on the Town of Marlborough Community/Recreation Center, Phase 2 Alteration Project (the "Project"), located in Marlborough, New York. (Id. ¶ 22.) WND failed to remit contributions owed to the Funds for Covered Work performed on the Project for the period October 2022 through March 2023 in the principal amount of $87,706.65. (Id. ¶ 23.) Former Defendant Arch Insurance Company issued a payment bond guaranteeing payment of all wages and benefits owed by WND in connection with its work on the Project. (¶ 26.)

Pursuant to ERISA, the CBA, and the Collection Policy, WND is liable for interest on the delinquent contributions, as well as liquidated damages. (Id. ¶ 24.) The Collection Policy provides that interest on delinquent contributions is to be calculated at a rate of 0.75% per month, compounded monthly, and that the amount of liquidated damages shall be twenty percent of the delinquent contributions. (Id. ¶¶ 15-16.) Finally, the Collection Policy provides that the employer shall be liable for all costs incurred in collecting delinquent contributions, including, without limitation, audit costs and arbitration fees. (Id. ¶ 17.)

As stated above, at the time this action was commenced, WND owed contributions to the Funds in the amount of $87,706.56. In July 2024, during the pendency of this action, former Defendant Arch settled with the Funds and agreed to resolve certain delinquent employee benefit contributions owed by WND in the amount of $75,217.60 (the "Paid Delinquency"). (Tompuri Decl. ¶ 12.) Accordingly, as of the date of the filing of the motion for default judgment, the amount due and owing by WND, which covers the period November 19, 2022 through March 3, 2023, is $12,205.12 (the "Remaining Delinquency"). (Id. ¶ 13.)

As set forth in Plaintiffs' motion for default judgment, Plaintiffs seek the following damages: (1) the Remaining Delinquency in the amount of $12,205.12; (2) interest on the Remaining Delinquency, as of October 31, 2024, in the amount of $1,938.12, with interest continuing to accrue; (3) liquidated damages on the Remaining Delinquency in the amount of $2,441.02; (4) late payment interest on the Paid Delinquency in the amount of $11,957.89, as of September 13, 2024, with interest continuing to accrue; and, (5) liquidated damages on the Paid Delinquency in the amount of $15,043.52, for a total monetary award of $43,585.67, plus additional interest. Plaintiffs also seek attorney's fees and costs in the amount of $10,152.43, as well as post-judgment interest.

DISCUSSION

I.    <u>Legal Standard</u>

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. <u>See</u> Fed. R. Civ. P. 55; <u>Priestley v. Headminder, Inc.</u>, 647 F.3d 497, 504-05 (2d. Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. <u>See</u> Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. <u>See</u> <u>id.</u>

4

Where a default occurs, the well-pleaded factual allegations set forth in the Complaint are deemed to be true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see also Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied"). However, "[i]t is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound discretion of the court." Allstate Ins. Co. v. Howell, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Ferrara v. Tire Shop Ctr., No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015). Accordingly, the court must determine whether a plaintiff's allegations establish liability as a matter of law. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law.") (internal quotation omitted).

II.     Liability

Pursuant to Section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; see also LaBarbera v. J.D.

5

Collyer Equip. Corp., 337 F.3d 132, 134 (2d Cir. 2003). In addition, Section 301 of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees . . . ." 29 U.S.C. § 185(a). Here, Article XVII of the CBA obligates WND to remit benefit contributions to the Funds in accordance with the terms of the CBA for every hour of work performed by its employees within the trade and geographical jurisdiction of the Union. (Banfield Decl. ¶ 10 and Ex. A, Art. XVII.)

Plaintiffs allege in the Amended Complaint that WND failed to remit $87,706.56 in employee benefit contributions. (Am. Compl. ¶ 23.) While a portion of the outstanding contributions have been satisfied by Arch's payment of the Paid Delinquency, $12,205.12 remains due and owing. (Tompuri Decl. ¶ 12.) Based on these allegations, as well as the Declarations of William Banfield, a member of the Executive Committee of the Union, and Kim Tompuri ("Tompuri"), the New York Collections Manager for the Funds, which substantiate these allegations, the Court concludes that there is a basis for liability for violations of ERISA and the LMRA based on WND's breach of the CBA. Accordingly, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted.

III.    Damages

Although a default judgment entered on the well-pleaded allegations in a complaint establishes a defendant's liability, a plaintiff must still prove damages. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Credit Lyonnai Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Plaintiffs herein seek unpaid contributions, interest, and liquidated damages, as specified in ERISA and the CBA, as well as attorney's fees and costs.

A.    <u>Delinquent Contributions</u>

As stated above, while Plaintiffs initially alleged that WND failed to pay contributions in the amount of $87,706.56, taking into account the Paid Delinquency of $75,217.60, the Remaining Delinquency is $12,205.12 for the period November 19, 2022 through March 3, 2023. (Am. Compl. ¶ 23; Tompuri Decl. ¶ 13.) Accordingly, this Court recommends that Plaintiffs be awarded $12,205.12 in damages representing WND's delinquent contributions.

B.    <u>Interest</u>

Section 502(g)(2)(B) of ERISA mandates an award of interest on unpaid contributions. <u>See</u> 29 U.S.C. § 1132(g)(2)(B). Pursuant to the Funds' Collection Policy, interest is also due on late-paid contributions. (Tompuri Decl., Ex. C, Art. II, § 2.1(D).) The rate of interest on delinquent and late-paid contributions is calculated at a rate of 0.75% per month (9% per annum), compounded monthly. (Tompuri Decl. ¶ 16 and Ex. C.) Applying the foregoing interest rates, Plaintiffs calculated the interest due and owing on the Remaining Delinquency to be $1,938.12 as of October 31, 2024, with interest continuing to accrue at a rate of 9% per annum through the date of judgment herein. (Tompuri Decl. ¶ 16 and Ex. D, annexed thereto.) Plaintiffs further calculated late payment interest on the Paid Delinquency, in accordance with the foregoing rates, to be $11,957.89 as of September 13, 2024, with interest continuing to accrue at a rate of 9% per annum. (Tompuri Decl. ¶ 18 and Ex. G, annexed thereto.)

Based on the foregoing, this Court respectfully recommends that Plaintiffs be awarded $1,938.12 in interest on the Remaining Delinquency as of October 31, 2024, as well as additional interest to be calculated at a rate 0.75% per month (9% per annum), compounded monthly, through the date of judgment herein. The Court further recommends that Plaintiffs be awarded

late payment interest on the Paid Delinquency in the amount of $11,957.89 as of September 13, 2024, as well as additional interest to be calculated at a rate 0.75% per month (9% per annum), compounded monthly, through the date of judgment herein

      C.     <u>Liquidated Damages</u>

      Both the CBA and Section 502(g)(2)(C) of ERISA provide for an award of liquidated damages. <u>See</u> 29 U.S.C. § 1132(g)(2)(C). Here, the CBA specifies that "liquidated damages shall be 20% of the delinquent contributions." (Tompuri Decl., Ex. C, Art. VI § 6.1.) As demonstrated by the allegations of the Complaint and Tompuri's declaration, Plaintiffs calculated WND's liquidated damages, in accordance with the provisions of the CBA, to be $2,441.02 on the Remaining Delinquency and $15,043.52 on the Paid Delinquency. (Tompuri Decl. ¶¶ 17, 19 and Ex. G, annexed thereto.) WND has taken no action to challenge this assessment. As Plaintiffs have demonstrated their right to recover liquidated damages, this Court respectfully recommends that liquidated damages be awarded in the amount of $2,441.02 on the Remaining Delinquency and $15,043.52 on the Paid Delinquency.

      D.     <u>Post-Judgment Interest</u>

      Plaintiffs should also be awarded post-judgment interest, pursuant to 28 U.S.C. § 1961, which must be applied to "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; <u>see also</u> <u>Khurana</u>, 2017 WL 1251102, at *17. Accordingly, this Court recommends awarding post-judgment interest, to be calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. <u>See</u> 28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week

preceding."); see also Schipani v.McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute).

V.      Attorney's Fees and Costs

Both the CBA and ERISA entitle Plaintiffs to recover reasonable attorney's fees and costs. Plaintiffs seek $9,471.50 in attorney's fees and $680.93 in costs.

A.      Attorney's Fees

As a general matter when determining attorney's fees, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'") (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court has held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A., 559 U.S. 542, 551 (2010) (emphasis in original). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" Id. at 553 (citation omitted); see also Arbor Hill, 522 F.3d at 190-91 (holding that a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying

client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

The reasonableness of hourly rates is guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney who worked on the action. See Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." Perdue, 559 U.S. at 552.

Here, Plaintiffs seek to recover $9,417.50 in attorney's fees and have submitted the Declaration of Maura Moosnick, dated November 15, 2024 ("Moosnick Decl."), and contemporaneous billing records in support of their application. (Moosnick Decl. and Ex. M, annexed thereto.) Plaintiffs seek reimbursement for services rendered by the following individuals: (1) Maura Moosnick, a partner in Plaintiffs' law firm, at a rate of $275.00 per hour for work performed prior to July 1, 2024 and at a rate of $350.00 per hour for work performed after July 1, 2024; (2) Jayden Peters, an associate, at a rate of $275.00 per hour; (3) Matthew Vani, a law clerk, at a rate of $275.00 per hour; (4) Eva Keating, a paralegal, at a rate of $120.00 per hour; and, (5) Abigail Frankel, a paralegal, at a rate of $120.00 per hour. (Moosnick Decl. ¶¶

12-16, Ex. M.) The time spent on this action by counsel and its staff totals 46.25 hours. (Moosnick Decl. ¶ 18, Ex. M.)

Plaintiffs' submission adequately sets forth the background and experience of the attorneys and paralegals who billed time on this action. Moreover, as stated above, Plaintiffs' application is supported by contemporaneous time records that detail the tasks the attorneys and paralegals performed in connection with this action, as well as the time expended on each task. (Moosnick Decl., Ex. M.) Having reviewed the documents submitted, this Court finds both the number of hours expended and the hourly rates to be reasonable. See Trustees of Pavers and Road Builders Dist. Council Welfare, Pension, and Annuity Funds v. Rici Corp., No. 23-CV-5856, 2024 WL 4314958, at *8 (E.D.N.Y. Aug. 19, 2024) ("In ERISA matters, courts in the Eastern District of New York have approved hourly rates of $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals."). Accordingly, the Court respectfully recommends that Plaintiffs be awarded $9,471.50 in attorney's fees.

B.    Costs and Disbursements

Plaintiffs also seek a total of $680.93 in costs and disbursements in connection with the instant action. (Moosnick Decl. ¶ 19 and Ex. N, annexed thereto.) These costs are comprised of: (1) $402.00 for the court filing fee; (2) $64.28 in postage fees; (3) $18.65 in research fees; and (4) $196.00 for process server fees. (Moosnick Decl. ¶ 19, Ex. N.)

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." Ganci v. U.S. Limousine Serv. Ltd., No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting Pennacchio v. Powers, No. 05-cv-985, 2011 WL 2945825, at

11

*2 (E.D.N.Y. July 21, 2011)). The costs for which Plaintiffs seek to recover are those ordinarily associated with litigation and this Court finds them to be reasonable. Accordingly, the Court respectfully recommends that Plaintiffs be awarded $680.93 in costs and disbursements.

## RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion for default judgment be granted, and that Plaintiffs be awarded the following: (1) the Remaining Delinquency of $12,205.12, covering the period November 19, 2022 through March 3, 2023; (2) interest on the Remaining Delinquency in the amount of $1,938.12 as of October 31, 2024, with additional interest to be calculated at a rate of 0.75% per month (9% per year), compounded monthly, through the date of judgment herein; (3) late payment interest on the Paid Delinquency in the amount of $11,957.89 as of September 13, 2024, with additional interest to be calculated at a rate of 0.75% per month (9% per year), compounded monthly, through the date of judgment herein; (4) $2,441.02 in liquidated damages on the Remaining Delinquency; (5) $15,043.52 in liquidated damages on the Paid Delinquency; (6) attorney's fees in the amount of $9,471.50; and, (7) $680.93 in costs.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Plaintiffs. Further, the Court is directing Plaintiffs to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant WND Construction LLC at its last known address(es) and to file proof of service on ECF by February 7, 2025. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be

directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court of Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").


**SO ORDERED:**

Dated:  Central Islip, New York
      February 4, 2025                    /s/     Anne. Y. Shields
                                        ANNE Y. SHIELDS
                                        United States Magistrate Judge